UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ALCOA CORP. and ALCOA USA CORP.,

                         Plaintiffs,                                   20-cv-3834 (PKC)

               -against-

                                                                       OPINION
                                                                       AND ORDER

ANHEUSER-BUSCH INBEV SA/NV et al.,

                         Defendants.
------------------------------------------------------------x

CASTEL, U.S.D.J.:

               Defendants Anheuser-Busch InBev SA/NV, Anheuser-Busch Companies, LLC,

and Metal Container Corporation (collectively, "AB") move to compel arbitration of Count I of

the Complaint brought by Alcoa Corporation and Alcoa USA Corp. (collectively, "Alcoa") and

to otherwise stay this action.  Count I seeks declaratory judgment that AB's claim under a 2013

agreement with Alcoa's then-corporate parent is not arbitrable.  Count II asserts a claim by Alcoa

USA Corp. against certain of the AB entities.

               For reasons that will be explained, the motion to compel arbitration will be

granted as to the two claims of Anheuser-Busch InBev SA/NV ("InBev") against Alcoa

Corporation asserted in the demand for arbitration.  All claims in the Complaint will be stayed

pending arbitration.

BACKGROUND

               In 2013, InBev, a defendant in this action, entered into a patent licensing

agreement with Alcoa, Inc., then the corporate parent of Alcoa Corporation and Alcoa USA

Corp., licensing InBev to produce a lightweight re-closable aluminum bottle (the "2013

Agreement"). The 2013 Agreement contained restrictions on disclosure or use of confidential information produced by the parties in connection with the project. AB claims that Alcoa breached the 2013 Agreement by using and disclosing InBev's confidential information in order to secure a patent in Alcoa's favor.

Section 11.6 of the 2013 Agreement provided for arbitration under the rules of the American Arbitration Association ("AAA") in New York, New York. (See 2013 Agreement (Doc 26, Ex. A) § 11.6.) Insofar as is material to the present dispute, it provided:

> (i) The arbitrator shall only be empowered to determine . . . (b) whether any breach of this Agreement, including but not limited to any breach of confidentiality, has occurred; and (c) any other dispute arising out of this Agreement, except for disputes relating to infringement, validity or enforceability of the Alcoa Patent Rights or the Alcoa Bottle Patent Rights . . . .
>
> (iii) Exclusive Remedy. Except as otherwise provided herein, each Party acknowledges and agrees that arbitration pursuant to this Article 11.6 shall be the sole and exclusive procedure for resolving any dispute, controversy or claim between the Parties arising under this Agreement. . . .

(Id.)

AB initiated the pre-arbitration procedures on February 25, 2020 and served a demand for arbitration on April 29, 2020 (the "Demand"). (Doc 26, Ex. D.) AB asserts that the claim in arbitration is comfortably within the parties' agreement to submit claims to arbitration as to "whether any breach of [the 2013] Agreement, including but not limited to any breach of confidentiality, has occurred." (Id., Ex. A § 11.6(i).)

The AAA Commercial Rules that apply to the claims in AB's Demand provide as follows: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or the arbitrability of any claim or counterclaim. (Thomas Decl. (Doc 9), Ex. A, Rule 7(a).)

In addition to AB's motion, Alcoa's response, and AB's reply, each of which was supported by declarations and documentary evidence, the Court granted Alcoa a sur-reply supported by a declaration and sur-sur reply by AB consisting solely of argument. The Court heard argument on the motion on August 20, 2020.

LEGAL STANDARD

In the context of a motion to compel arbitration, courts apply the same standard used at summary judgment. See Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003) ("the summary judgment standard is appropriate in cases where the District Court is required to determine arbitrability . . . ."). As the movant, AB has the initial burden of coming forward with evidence establishing that no genuine dispute of material fact exists such that the parties' dispute must be decided by an arbitrator. If AB satisfies its burden, Alcoa must come forward with admissible evidence sufficient to show that the parties are not required to proceed with arbitration. Jaramillo v. Weyerhaeuser Co., 536 F.3d 140, 145 (2d Cir. 2008) (applying summary judgment standard). The non-movant does not satisfy its burden by raising "assertions that are conclusory . . . or based on speculation . . . ." Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 310 (2d Cir. 2008) (applying summary judgment standard) (internal citations omitted).

DISCUSSION

    A.  The Question of Arbitrability is for the Court to Decide.

"'[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002) (quoting Steelworkers v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582 (1960)). "The question whether the parties have submitted a particular dispute to

arbitration, *i.e.,* the 'question of arbitrability,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" Id. (quoting AT & T Techs., Inc. v. Commc'ns Workers, 475 U.S. 643, 649 (1986)) (emphasis omitted, alteration in original).

The Second Circuit has drawn a distinction between broad arbitration provisions that submit any and all disputes to arbitration and those that submit less than all disputes. In the case of the former, arbitration clauses have been found to "clearly and unmistakably" provide for an arbitrator to determine whether a particular issue is arbitrable "where a broad arbitration clause expressly commits all disputes to arbitration," which would include "disputes as to arbitrability." NASDAQ OMX Grp., Inc. v. UBS Secs., LLC, 770 F.3d 1010, 1031 (2d Cir. 2014). An agreement's incorporation of the rules of the designated tribunal, such as the AAA Commercial Rules, that provide for arbitrability to be decided by the arbitrator, may be such "clear and unmistakable" evidence of the parties' intent to submit all disputes to arbitration where the arbitration provision itself is broad. Id. at 1032. But in the case of an arbitration clause that does not sweep in any and all disputes, the Court must decide whether the dispute falls within the arbitration provision. Id. at 1031. Because the Court finds that the arbitration provision of the 2013 Agreement is narrow, arbitrability is for the Court to decide.

In considering whether the dispute falls within the arbitration provision, the Court is mindful that "[u]nder the FAA, 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'" JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 169 (2d Cir. 2004) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)).

Section 11.6 of the 2013 Agreement is a narrow arbitration provision. The provision does not commit "all disputes" to arbitration, but cabins the arbitrator's authority: "The arbitrator shall only be empowered to determine . . . (b) whether any breach of this Agreement, including but not limited to any breach of confidentiality, has occurred; and (c) any other dispute arising out of this Agreement, except for disputes relating to infringement, validity or enforceability of the Alcoa Patent Rights or the Alcoa Bottle Patent Rights . . . ." (Doc 26, Ex. A § 11.6(i).) The Agreement also carves out certain exceptions to arbitration as the sole mechanism for dispute resolution. (Id. § 11.6(iii).) For these reasons, the Court finds that the parties did not "clearly and unmistakably" commit the question of arbitrability to the arbitrator. NASDAQ OMX Grp., 770 F.3d at 1032 (the defendant could not "point to a clear and unmistakable expression of the parties' intent to submit arbitrability disputes to arbitration . . . . [b]y pointing to a broad arbitration clause that the parties subjected to a carve-out provision."). Having determined that arbitrability is for the Court to decide, the next question is whether the claims here are arbitrable.

B.   The Claims in the Demand are Within the Arbitration Provision.

Unambiguously, Count I of AB's Demand for arbitration asserts that Alcoa breached the 2013 Agreement by filing and prosecuting patent applications (the "Alcoa Low Spread Patent Applications") that relied on AB's confidential information, in violation of the Agreement's confidentiality provisions, i.e., sections 8.1(a) & (c). (Doc 26, Ex. D ¶¶ 79-80.) Count II, the only other claim in the Demand, alternatively alleges that "if the Alcoa Low Spread Patent Applications are not based on and do not include any of AB's Confidential Information, Alcoa breached Section 4.1 of the Agreement by failing to notify AB of any alleged intellectual property rights concerning low-spread aluminum prior to Alcoa providing any technical

support." (Id. ¶ 85.)  AB's Demand "seeks a declaration that [Alcoa] has breached the

Agreement, an award of damages, and such other relief as set forth herein or as the arbitrator

may deem just and proper." (Id. ¶ 9.)  Thus, the Demand falls squarely within the reference to

arbitration of a dispute as to "whether any breach of this Agreement, including but not limited to

any breach of confidentiality, has occurred. . . ." (Doc 26, Ex. A § 11(i)(c).)

Alcoa attempts to avoid this conclusion by arguing that AB seeks to obtain the

rights or benefits of U.S. Patent No. 10,222,773 (the "'773 Patent") that is covered by a later

patent licensing agreement between Alcoa USA Corp. and Anheuser-Busch Companies, LLC

("ABC") and its affiliate, Metal Container Corporation ("MCC") (collectively referred to in the

Agreement as "Licensee"). (2019 Agreement (Doc 26, Ex. B).)[1]  The 2019 Agreement does not

have an arbitration clause.  But no portion of AB's arbitration claim makes an inventorship claim

or otherwise seeks to challenge the validity, enforceability, or ownership of the '773 Patent.

Such relief would be beyond the scope of the arbitration provision.

A party's right to protect its confidential information is not subsumed or

preempted by the issuance of patent to another based upon that information.  In University of

Colorado Foundation, Inc. v. American Cyanamid Co., 342 F.3d 1298 (Fed. Cir. 2003), the

Federal Circuit engaged in a preemption analysis to decide whether claimants' state law claim

for use of their information in violation of an implied-in-law contract not to do so was preempted

by patent law because the thrust of the claim was that the information was used to obtain a

patent.  The question of preemption in this context focuses on whether the right and the remedy

asserted are "patent-like." Id. (quoting Bonito Boats, Inc. v. Thunder Craft Boats, Inc., 489 U.S.

---

[1] AB refers to this Agreement as the "2018 Agreement" because its effective date is July 18, 2018; Alcoa refers to this Agreement as the "2019 Agreement," because the parties executed it in December 2019. (Compare Doc 8 at 5 with Doc 22 at 7.)  The Court refers to this agreement as the 2019 Agreement.

141, 156 (1989)). The Federal Circuit concluded that the unjust enrichment claim at issue was

not preempted, noting, among other things, that if the claimants prevailed, it would not affect the

validity or enforceability of the patent:

> The right involved here and compensated for under a theory of unjust enrichment,
> however, is not 'patent-like' at all. As we explained in *Cyanamid IV,* "the unjust
> enrichment claim springs not from an attempt to enforce intellectual property
> rights, but instead from Cyanamid's alleged wrongful use of the Doctors' research
> results." . . . . [U]nder Colorado law, . . . the Doctors' claim of unjust enrichment
> is a legal claim to remedy the breach of a contract implied in law for disclosure of
> their confidential manuscript in exchange for a promise not to disseminate the
> idea without the Doctors' consent.  The fact that Cyanamid improperly secured
> the '634 patent and used this patent to obtain incremental profits only pertains to
> restitution for the unjust enrichment claim.

Univ. of Colorado Found., Inc., 342 F.3d at 1306 (citations omitted); see Russo v. Ballard Med.

Prod., 550 F.3d 1004, 1010 (10th Cir. 2008) (breach of contractual confidentiality did not raise a

substantial question under patent law even though the plaintiff's damages arose from the

defendant's use of the information to obtain a patent.)

Here, Alcoa's precise argument is not one of patent preemption, but of the

application of the merger clause in the 2019 Agreement between Alcoa USA and ABC (neither

of which is a party to the 2013 Agreement).  The 2019 Agreement granted ABC and its affiliate,

MCC, a license to the '773 Patent, which is the alleged fruits of the breach of the 2013

Agreement.[2]  (Doc 26, Ex. B.)  The merger clause provides as follows:  "The terms and

conditions herein contained constitute the entire agreement between the Parties and supersede all

previous agreements and understandings, whether oral or written, between the Parties hereto with

respect to the subject matter hereof . . . ."  (Id. § 11.11.)  Alcoa's argument fails because it has

---

[2] Both the 2013 Agreement and the 2019 Agreement have New York choice of law provisions.  (Doc 26, Ex. A
§ 11.4; Doc 26, Ex. B § 11.4.)

not shown that the subject matter of the 2019 Agreement includes the ongoing duty to protect

confidential information set forth in the 2013 Agreement.

   The 2019 Agreement relates to the '773 Patent, including a provisional patent

application that led to the issuance of the '773 Patent.  The 2013 Agreement licensed certain

other Alcoa patent rights and protected confidential information exchanged by the parties.  The

confidentiality provisions included post-termination protections on the exchanged confidential

information.  (Doc 26, Ex. A § 7.5(d) (enumerating sections surviving termination of the

Agreement, including the whole of Article 8, "Non-Disclosure and Confidentiality"); id. § 8.3.)

If the parties to the 2019 Agreement intended that the mutual and ongoing obligation of their

affiliated entities to protect each other's confidential information was to be extinguished by the

2019 Agreement, they would have been explicit.  See Matthius v. Platinum Estates, Inc., 74

A.D.3d 908, 909-910 (2010) (indemnification agreement by contractor was not extinguished by

subsequent agreement with merger clause that set forth the work to be done by the contractor and

the insurance to be obtained); Gordon v. Patchogue Surgical Co., 222 A.D.2d 651, 651 (1995)

(oral contract entitling employee to certain earned, unpaid funds was not extinguished by later

employment agreement with merger clause where "the two contracts concerned different subject

matters.").

   The Court is mindful that the 2019 Agreement expressly allowed the Licensee to

challenge the inventorship of the licensed patents in a "Derivation Proceeding"[3] or in an action

pursuant to 35 U.S.C. § 256 (correction of named inventor).  (Doc 26, Ex. B § 11.14.)  It also

---

[3] "A derivation proceeding is a trial proceeding conducted at the [Patent and Appeal] Board [of the United States Patent and Trademark Office] to determine whether (i) an inventor named in an earlier application derived the claimed invention from an inventor named in the petitioner's application, and (ii) the earlier application claiming such invention was filed without authorization."  Derivation Proceeding, USPTO, https://www.uspto.gov/patents-application-process/appealing-patent-decisions/trials/derivation-proceeding#:~:text=A%20derivation%20proceeding%20is%20a,invention%20was%20filed%20without%20authorization. (last visited Aug. 25, 2020).

allowed the Licensee to challenge the validity of the '773 Patent.  (Id.)  A provision expressly

allowing the Licensee to pursue these patent remedies relating to the '773 Patent in a licensing

agreement for the '773 Patent does not, in the absence of explicit language, extinguish

contractual rights under the 2013 Agreement to which neither party to the 2019 Agreement was a

signatory.

For these reasons, the Courts finds that the two claims in AB's Demand fall

squarely within the arbitration provision of the 2013 Agreement.  The 2013 Agreement has not

been extinguished by reason of the 2019 Agreement.

C.   Alcoa Corporation, But Not Alcoa USA, is Bound by the 2013 Agreement.

Alcoa Corporation and Alcoa USA Corp. were at the time of the execution of the

2013 Agreement subsidiaries of Alcoa Inc.  Neither subsidiary was a party to the 2013

Agreement.  They assert that as non-signatories, they are not bound by the arbitration provision

of the 2013 Agreement.[4]

There are five theories "for binding nonsignatories to arbitration agreements: 1)

incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5)

estoppel."  MAG Portfolio Consult, GMBH v. Merlin Biomed Grp. LLC, 268 F.3d 58, 61 (2d

Cir. 2001) (quoting Thomson–CSF, S.A. v. Am. Arbitration Ass'n, 64 F.3d 773, 776 (2d

Cir.1995)).   AB, the party seeking to arbitrate with a non-signatory, has the burden of proving

one or more of the five theories.  Local Union No. 38, Sheet Metal Workers' Int'l Ass'n, AFL-

CIO v. Custom Air Sys., Inc., 357 F.3d 266, 268 (2d Cir. 2004).  With regard to Alcoa

---

[4] Alcoa Corporation's position that the 2019 Agreement superseded the 2013 Agreement is in tension with its
position that Alcoa Corporation is not Alcoa Inc.'s successor to the 2013 Agreement.  Were Alcoa Corporation not
bound by the 2013 Agreement, it would have no basis to assert that an agreement to which it was not a party was
superseded by a later agreement.

Corporation, AB relies principally upon assumption and estoppel. The Court addresses each in turn.

> i. Alcoa Corporation Assumed the Post-Termination Liabilities of the 2013 Agreement, Including the Obligation to Arbitrate.

"It is hornbook law that a non-signatory to a contract cannot be named as a defendant in a breach of contract action unless it has thereafter assumed or been assigned the contract." Crabtree v. TriStar Automotive Grp., Inc., 776 F. Supp. 155, 166 (S.D.N.Y. 1991); Impulse Mktg. Grp., Inc. v. Nat'l Small Business Alliance, Inc., 05 cv 7776 (KMK), 2007 WL 1701813, at *5 (S.D.N.Y. June 12, 2007) (quoting Crabtree); see also ESI, Inc. v. Coastal Corp., 61 F. Supp. 2d 35, 73 (S.D.N.Y. 1999) ("[A] non-signatory to a contract can be named as a defendant in a breach of contract action only if the party is in privity with the plaintiff or has assumed the obligations of the contract."). Alcoa Corporation expressly assumed the obligations of the 2013 Agreement, which necessarily includes the arbitration provision.

It is undisputed that Alcoa Inc. spun off its subsidiary, Alcoa Corporation, as a public company.[5] In a Separation and Distribution Agreement (the "Spin-Off Agreement") between Alcoa Inc. and Alcoa Corporation (then known as Alcoa Upstream Corporation) dated October 31, 2016, Alcoa Inc. transferred assets to Alcoa Corporation, and Alcoa Corporation assumed Alcoa Inc.'s liabilities. (Thomas Reply Decl. (Doc 30), Ex. D §§ 2.1-2.3.) Section 2.1 of the Spin-Off Agreement provided for the transfer of "UpstreamCo Assets" from Alcoa Inc. to

---

[5] Though immaterial to the disposition of the motion, Alcoa Inc. has twice changed its name since 2016, first, to Arconic Inc. and, later, to Howmet Aerospace Inc. (See Doc 22 at 7.) For ease of reference, the entity will be referred to by its name in 2013, Alcoa Inc.

Alcoa Corporation.  (Id. § 2.1(a)(i).)  "UpstreamCo Assets" are defined to include "UpstreamCo

Contracts."  (Id. § 2.2(a)(v).)

   By the express terms of the Spin-Off Agreement, Alcoa Corporation would

"accept, assume, agree faithfully to perform, discharge and fulfill, or succeed to, all the

UpstreamCo Liabilities in accordance with their respective terms."  (Id. § 2.1(a)(ii).)

"UpstreamCo Liabilities" are defined to include those "arising out of or resulting from

UpstreamCo Contracts . . . ."  (Id. § 2.3(a)(v).)  "UpstreamCo Contracts" include license

agreements related to the "UpstreamCo Business."  (Id. at 14.)  The "UpstreamCo Business"

includes the "Warrick operations in the United States."  (Id. at 13.)  Alcoa.com, the website of

Alcoa Corporation, states that customers use the Warrick, Indiana facility for "aluminum . . .

beverage containers," and describes its capabilities as including "bottle stock."  (Doc 30, Ex. E;

Rolled Products, ALCOA, https://www.alcoa.com/global/en/what-we-do/aluminum/rolled-

products/default.asp (last visited Aug. 25, 2020).)  Based upon this evidence, the Court

concludes that the 2013 Agreement was transferred by Alcoa Inc. to Alcoa Corporation, and that

Alcoa Corporation assumed the benefits and liabilities arising out of the assigned contracts.

Further, Alcoa Inc. assigned the unexpired patents licensed by the 2013 Agreement to Alcoa

USA.  (Doc 30, Ex. F.)

   At oral argument, counsel for Alcoa expressly conceded that Alcoa Corporation

assumed the liabilities of Alcoa Inc. pursuant to the Spin-Off Agreement: "[I]n fact there has

been an assumption of liabilities in the separation agreement."  (Hr'g Tr. at 42; see also id. at 51:

"[T]he liabilities that were assumed are an assumption of liabilities only between Alcoa Corp.

and Alcoa Inc. . . . .").  Counsel, however, argued that Alcoa Corporation's assumption of the

liabilities arising out of the 2013 Agreement does not permit AB to compel Alcoa Corporation to

arbitrate because "AB lacks privity to invoke that contract for its own benefit."  (Id. at 51.)

Privity is not required.  A non-signatory may be named as a defendant in a breach of contract

action if the non-signatory "is in privity with the plaintiff or has assumed the obligations of the

contract."  ESI, Inc., 61 F. Supp. 2d at 73 (emphasis added); see also Thomson-CSF, 64 F.3d at

777 ("In the absence of a signature, a party may be bound by an arbitration clause if its

subsequent conduct indicates that it is assuming the obligation to arbitrate."); Jennings v. Hunt

Cos., 367 F. Supp. 3d 66, 71 (S.D.N.Y. 2019) (a court can infer a non-signatory's intent to be

bound by a contract where, "based on the totality of [a party's] expressed words and deeds," it

"is in privity with the plaintiff or has assumed the obligations of the contract.") (internal

quotation marks and citations omitted, alteration in original); Crabtree, 776 F. Supp. at 166 ("[A]

non-signatory to a contract cannot be named as a defendant in a breach of contract action unless

it has thereafter assumed or been assigned the contract.").

        Alcoa argues that the 2013 Agreement could not have been assigned because

Alcoa Inc. did not intend to assign "expired" contracts to Alcoa Corporation.  (Miller Decl. (Doc

34) ¶ 5.)  The 2013 Agreement expired on February 17, 2015.  (Doc 26, Ex. A § 7.1.)  Further,

Alcoa submits that Alcoa Inc. merely agreed to "cause" the transfer or assignment of

UpstreamCo Assets, which include UpstreamCo Contracts, to Alcoa Corporation, and not that it

had or did transfer such contracts.

        These arguments fail for several reasons.  First, Alcoa Inc. was, indeed, obligated

to transfer or assign the 2013 Agreement because the Agreement imposed ongoing post-

termination confidentiality and other obligations on InBev and Alcoa Inc.  (Doc 26, Ex. A

§§ 7.5, 8.3.)  There is no claim by Alcoa Corporation that its own confidential information did

not become an asset of Alcoa, Inc. as a result of the Spin-off Agreement.  The 2013 Agreement

protected this asset.  The Miller Declaration is the recollection of one in-house attorney involved in the 2016 spin-off; the declaration is conclusory and provides no documentary support for its claim that the 2013 Agreement was not assigned.  (See Doc 34.)  More fundamentally, the Miller declaration fails to address or take account of the rudimentary difference between a contract that has terminated and one that has terminated but has ongoing post-termination obligations.

Further, the Miller declaration fails to take account of the sweeping and unconditional assumption of liability provision of the Spin-off Agreement.  The section titled "Transfer of Assets and Assumption of Liabilities" provides that Alcoa Corporation (or a designated entity that it is part of its group) "shall accept, assume, agree faithfully to perform, discharge and fulfill, or succeed to all the UpstreamCo Liabilities in accordance with their respective terms."  (Doc 30, Ex. D § 2.1(a)(ii).)  This provision applies to liabilities that arise before or after the spin-off.  As described further above, "UpstreamCo Liabilities" include those arising out of "UpstreamCo Contracts," which in turn include licensing agreements, of which the 2013 Agreement is one.  (Id. § 2.2(a)(v).)  The assumption of liability was self-executing and required no further action to become effective "on or prior to the Effective Time" of the spin-off.  (Id. § 2.1.)  Alcoa Corporation succeeded as a matter of law to the terms of the contract that gave rise to the liability in the Demand—the 2013 Agreement, with its arbitration provision.  As a result, Alcoa Corporation is obligated to arbitrate pursuant to the 2013 Agreement.

        ii.     Estoppel is Not a Basis to Compel Alcoa to Arbitrate.

Having concluded that Alcoa Corporation has assumed the liabilities in the 2013 Agreement and is thus bound by its arbitration provision, the Court need only reach AB's estoppel argument as it applies to Alcoa USA.  AB's estoppel argument hinges on the alleged

misuse of its confidential information that Alcoa Inc. received in connection with the 2013

Agreement.

"A party is estopped from denying its obligation to arbitrate when it receives a

'direct benefit' from a contract containing an arbitration clause." Am. Bureau of Shipping v.

Tencara Shipyard S.P.A., 170 F.3d 349, 353 (2d Cir. 1999); see MAG Portfolio Consult, GMBH,

268 F.3d at 61 ("[W]here a company 'knowingly accepted the benefits' of an agreement with an

arbitration clause, even without signing the agreement, that company may be bound by the

arbitration clause.") (citation omitted).  A "direct benefit" is one that "flow[s] directly from the

agreement," MAG Portfolio Consult, GMBH, 268 F.3d at 61, such as where, for example, the

benefit is one "specifically contemplated by the relevant parties," or where the non-signatory

receives "a tangible benefit, typically a financial benefit . . . ." McKenna Long & Aldridge, LLP

v. Ironshore Specialty Ins. Co., 14 cv 6633 (KBF); 14 cv 6675 (KBF), 2015 WL 144190, at *9

(S.D.N.Y. Jan. 12, 2015) (internal quotation marks and citation omitted).  "By contrast, the

benefit derived from an agreement is indirect where the nonsignatory exploits the contractual

relation of parties to an agreement, but does not exploit (and thereby assume) the agreement

itself." MAG Portfolio Consult, GMBH, 268 F.3d at 61.

AB asserts that confidential information obtained by Alcoa Inc. in the

performance of the 2013 Agreement eventually led to the '773 Patent, which Alcoa Inc. later

assigned to Alcoa USA, and Alcoa USA continued to pursue this and related patent applications.

Any benefit that Alcoa allegedly received in connection with Alcoa Inc.'s purported misuse of

AB's confidential information, is at best, however, an indirect benefit and would therefore not be

a basis to estop Alcoa from avoiding arbitration.  That Alcoa Inc. later assigned the '773 Patent

and related applications to Alcoa USA does not speak to the intent of Alcoa Inc. or Alcoa USA at the time the information was allegedly misappropriated.

As AB's Demand makes plain, any benefit that Alcoa may have realized from its use of AB's confidential information to file and prosecute the Low Spread Patent Applications arose from Alcoa's breach of the 2013 Agreement.  (Doc 26, Ex. D ¶ 79.)  This is not a benefit contemplated by InBev and Alcoa Inc. in the 2013 Agreement.  Accepting AB's position that the '773 Patent is the product of Alcoa's misuse of AB's confidential information, the '773 Patent is not a "direct benefit" of the 2013 Agreement on which AB can base a successful estoppel argument.  Boroditskiy v. European Specialties LLC, 314 F. Supp. 3d 487, 496 (S.D.N.Y. 2018) (allegation that petitioners took advantage of respondents' intellectual property to petitioners' purported advantage was an "indirect" benefit).  Therefore, estoppel is not a basis to compel Alcoa to arbitrate.

iii.    Alcoa USA, ABC, and MCC are Not Bound by the 2013 Agreement.

With respect to Alcoa USA, a non-signatory to both the 2013 Agreement and the Spin-Off Agreement, none of the five theories mentioned above for binding non-signatories to arbitration agreements fits.  AB has not come forward with evidence that Alcoa USA, unlike Alcoa Corporation, is a party to a subsequent agreement by which Alcoa USA assumed the benefits and liabilities of the 2013 Agreement.  While Alcoa USA did receive the assignment of the unexpired patents covered by the 2013 Agreement from Alcoa Inc. in connection with the spin-off, it received the assignment after the February 17, 2015 termination date of the 2013 Agreement.  The assignment of the unexpired patents does not estop Alcoa USA from avoiding arbitration because it received no royalty or other payment under the 2013 Agreement.  Alcoa USA also received assignment of the patent application from Alcoa Inc. that matured into the

'773 Patent and are the alleged fruits of the breach of the confidentiality pledge in the 2013

Agreement.  For the reasons set forth above, such an indirect benefit purportedly stemming from

the 2013 Agreement is not a basis to estop Alcoa USA here.  For these reasons, AB has failed to

demonstrate that Alcoa USA is bound by the arbitration provision in the 2013 Agreement.

AB has also failed to demonstrate how ABC and MCC may pursue a claim under

the 2013 Agreement.  Neither is a party to the 2013 Agreement, nor is there an argument that

either entity assumed benefits or liabilities of the Agreement.  That Alcoa USA entered the 2019

Agreement with ABC (and named MCC as ABC's affiliate) is immaterial to the arbitration

question.  The 2019 Agreement is not at issue here, it does not form the basis of AB's arbitration

Demand, and it does not have an arbitration clause.  Therefore, ABC and MCC may not bring

claims against Alcoa in arbitration.

D.  The Claims in Alcoa's Complaint Will be Stayed.

This is not a case where a party has asserted a claim in a federal plenary action

that the other side maintains is arbitrable.  In those circumstances, section 3 of the FAA would

counsel strongly in favor of a stay.  9 U.S.C. § 3.  Alcoa's Complaint seeks declaratory judgment

that the claims in the Demand are not arbitrable, and an injunction preventing defendants from

proceeding with arbitration (Count I).  Alcoa also seeks declaratory judgment that the 2013

Agreement has been superseded by and merged into the 2019 Agreement, and alleges that

defendants' initiation of arbitration proceedings that arise from the '773 Patent is a breach of the

2019 Agreement (Count II).  (See Doc 26.)

In the course of ruling on AB's motion, it became necessary to rule on Alcoa's

assertion that the claims in the Demand were not encompassed in the arbitration provision of the

2013 Agreement.  The Court has concluded that they are.  Alcoa also asserted in opposition to

16

the motion to compel that the 2013 Agreement was superseded by and merged into the 2019

Agreement.  The Court has concluded that the 2013 Agreement was not superseded by or merged

into the subsequent agreement.  The Court has also necessarily addressed the question of whether

the Demand implicates the '773 Patent, and has concluded that the Demand does not make any

inventorship claim or other challenge to the '773 Patent that would, according to the Complaint,

be a breach of the 2019 Agreement.  The Court need not decide at this juncture whether the two

claims in the Complaint are barred by the doctrine of issue preclusion.  It will stay the action

pending the outcome of the arbitration and then hear from the parties whether either of the claims

in the Complaint survives.

CONCLUSION

      1.      Because the arbitration provision that forms the basis for the motion to compel is

not broad in scope, it is left to the Court, not the arbitrator, to decide issues of arbitrability, i.e.,

whether any claim is arbitrable and, if so, who may assert it against whom.

      2.      The two claims in the Demand by Anheuser-Busch InBev SA/NV are both

arbitrable.

      3.      Alcoa Corporation has succeeded to the duties, obligations, and liabilities of

Alcoa Inc. under the 2013 Agreement and is, therefore, bound by the arbitration provision of that

agreement.

      4.      The 2019 Agreement did not supersede or thereby extinguish the arbitration

provision in the 2013 Agreement.

      5.      Alcoa USA is not bound by the 2013 Agreement and the claims against it are not

arbitrable.

6.      Anheuser-Busch Companies, LLC and Metal Container Corporation are not parties to the 2013 Agreement and may not bring claims against Alcoa in arbitration.

7.      All other issues are reserved for the arbitrator.

Defendant Anheuser-Busch InBev SA/NV's motion (Doc 7) is GRANTED insofar as plaintiff Alcoa Corporation is compelled to arbitrate the claims in the Demand, and the action brought by Alcoa is stayed pending arbitration.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated:  New York, New York
        September 2, 2020